Mashel M. MILLER, et al., Plaintiffs,

v.

WACKENHUT SERVICES,
INC., Defendant.

No. 91–0877–CV–W–9.

United States District Court,
W.D. Missouri, W.D.

Oct. 21, 1992.

Daniel Robert DeFoe, Tyree, Grimes, Martin and Roberts, Blue Springs, MO, Ronald D. Benedict, Independence, MO, for plaintiffs.

Patrick J. Doran, Niewald, Waldeck & Brown, PC., Kansas City, MO, for defendant.

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT ON COUNTS I THROUGH VIII

BARTLETT, District Judge.

Defendant Wackenhut Services, Inc. moves to dismiss Counts I through VIII of the Second Amended Petition for Damages pursuant to Rules 12(b)(1) and 12(b)(6), Federal Rules of Civil Procedure or, in the alternative, for summary judgment.

Plaintiffs Mashel and Donald Miller's Petition contains 14 counts: six counts based upon Title VII (42 U.S.C. § 2000e, *et seq.*), six counts based upon Missouri employment discrimination statutes (Mo.Rev.Stat. § 213.010, *et seq.*) and two counts based upon Missouri common law for negligent and intentional infliction of emotional distress.

Defendant argues that the Missouri statutory and common law claims must be dismissed because 1) the allegedly discriminatory acts occurred at the Lake City Army Ammunition Plant (Lake City), a federal enclave, and Congress has exclusive power to legislate in regard to federal enclaves;

2) the common law claim for intentional infliction of emotional distress is preempted by the Missouri Worker's Compensation Act; and 3) the conduct complained of in the emotional distress claim was not outrageous.

Defendant moves for leave to file sur-reply suggestions. Defendant's Motion for Leave to File Sur–Reply Suggestions will be granted and the sur-reply suggestions have been considered.

### I. *Motion to Dismiss*

**A. Standard for Dismissal Pursuant to Rule 12(b)(6)**

All factual allegations in the Complaint are to be taken as true as well as all inferences that reasonably may be drawn from those facts. *Hishon v. King and Spaulding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984). A Complaint should not be dismissed for failure to state a claim for relief unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle plaintiff to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957).

**B. Plaintiff's Employment Discrimination Claims Based on Missouri Statutes Will Be Dismissed**

The Congress shall have the Power ... To exercise exclusive Legislation in all Cases whatsoever, ... over all Places purchased by the Consent of the Legislature of the State in which the Same shall be, for the Erection of Forts, Magazines, Arsenals, dock-Yards, and other needful Buildings....

U.S. Const. art. I, § 8, cl. 17. When the federal government acquires title to state land with the consent of the state legislature, Congress acquires exclusive power to legislate in respect thereto. *Ft. Leavenworth R. Co. v. Lowe,* 114 U.S. 525, 538, 5 S.Ct. 995, 1002, 29 L.Ed. 264 (1885); *Paul v. United States,* 371 U.S. 245, 264, 83 S.Ct. 426, 438, 9 L.Ed.2d 292 (1963). The consent of the state is necessary for the extinguishing of state power. *Ft. Leavenworth,* 114 U.S. at 538, 5 S.Ct. at 1002; *Silas Mason Co. v. Tax Commission,* 302 U.S. 186, 197, 58 S.Ct. 233, 239, 82 L.Ed. 187 (1937).

On December 6, 1940, the United States purchased the land on which the Lake City Plant now rests. *See Choplin v. Francis,* 181 S.W.2d 222, 223–24 (Mo.App.1944). On June 11, 1942, the United States condemned an additional 320 acres to expand the Lake City Plant. *See Clark v. United States,* 155 F.2d 157, 158–59 (8th Cir.1946).

The Missouri General Assembly gave its consent to federal acquisition of the Lake City Plant land in 1947:

The consent of the State of Missouri is given, in accordance with the seventeenth clause, eighth section of the first article of the Constitution of the United States, to the acquisition by the United States by purchase, condemnation, or otherwise, of any land in this state as sites for custom houses, courthouses, post offices, arsenals, forts and other needful buildings required for military purposes.

Mo.Ann.Stat. § 12.030 (as amended in 1978).

In Mo.Rev.Stat. § 12.040 (as amended in 1978), the Missouri General Assembly also granted exclusive jurisdiction to the United States over land acquired with state consent by the United States, which would include the Lake City Plant:

Exclusive jurisdiction in and over any land acquired as set out in section 12.030 or otherwise lawfully acquired and held for any of the purposes set out in section 12.030 by the United States, is ceded to the United States for all purposes, saving and reserving, however, to the state of Missouri the right of taxation to the same extent and in the same manner as if this cession had not been made; and further saving and reserving to the state of Missouri the right to serve thereon any civil or criminal process issued under the authority of the state, in any action on account of rights acquired, obligations incurred, or crimes committed in this state, outside the boundaries of the land but the jurisdiction ceded to the United States continues no longer than the United States owns the lands and uses the

same for purposes set out in section 12.-030.

■ The grant of exclusive legislative power to Congress over enclaves that meet the requirements of Art. I, Sec. 8, Clause 17, bars state regulation unless Congress consents to state regulation. *Paul v. United States,* 371 U.S. 245, 263, 83 S.Ct. 426, 437, 9 L.Ed.2d 292 (1963); *West River Electric v. Black Hills Power & Light Co.,* 918 F.2d 713, 716 (8th Cir.1990). Furthermore,

> [b]ecause of the fundamental importance of the principles shielding federal installations and activities from regulation by the states, an authorization of state regulation is found only when and to the extent there is a clear congressional mandate, specific congressional action that makes this authorization of state regulation clear and unambiguous.

*Hancock v. Trane,* 426 U.S. 167, 179, 96 S.Ct. 2006, 2013, 48 L.Ed.2d 555 (1976) (citations omitted); *West River,* 918 F.2d at 716. Thus, federal law is the only law governing Lake City Plant, except to the extent Congress specifically authorizes state regulation.[1]

■ Plaintiffs argue that the following language is an express authorization of state legislation in federal enclaves:

> Nothing in this subchapter [42 U.S.C. § 2000e, *et seq.*] shall be deemed to exempt or relieve any person from any liability, duty, penalty, or punishment provided by any present or future law of any State or political subdivision of a State, other than any such law which purports to require or permit the doing of any act which would be an unlawful employment practice under this subchapter.

42 U.S.C. § 2000e–7.

This provision provides that Title VII does not preempt state statutes that also prohibit employment discrimination. It does not state that state law shall govern in a federal enclave where it otherwise would not apply. Thus, plaintiff's claims

under Missouri's statutes prohibiting employment discrimination must be dismissed.

### C. Plaintiff's Common Law Claims Are Not Preempted by Federal Law

In the two common law counts, plaintiffs allege that harassing telephone calls were made from the Lake City Plant to plaintiff Mashel Miller at her apartment in Independence, Missouri. Defendant argues that the alleged torts occurred on federal property outside the legislative power of Missouri.

■ A cause of action for negligence does not arise until the plaintiff suffers an injury. *Biscoe v. Kowalski,* 290 S.W.2d 133, 138 (Mo. banc 1956); *Quick v. All Tel Missouri, Inc.,* 694 S.W.2d 757, 759 (Mo. App.1985). When the injury is to a plaintiff's *person,* as opposed to her *property,* the claim generally will arise wherever the plaintiff happens to be when she is injured. The same principle applies to intentional torts.

■ Here, the alleged distress occurred in plaintiff's home in Independence. Thus, the claim arose in Independence, not at the Lake City Plant. Independence is subject to the legislative power of Missouri. Therefore, plaintiff Mashel Miller's Missouri common law claims cannot be dismissed on the ground that the tort occurred on federal property.

### D. Plaintiff's Claim For Intentional Infliction of Emotional Distress Will Be Dismissed

Defendant argues that plaintiff Mashel Miller's claim for intentional infliction of emotional distress must be dismissed because plaintiffs do not allege outrageous conduct.

■ The elements of the tort of intentional infliction of emotional distress are: 1) defendant's conduct was extreme and outrageous, 2) defendant acted in an intentional or reckless manner, and 3) defendant's conduct resulted in severe emotional distress. *Hendrix v. Wainright Industries,* 755 S.W.2d 411, 412 (Mo.App.1988).

---

**1.** Congress has authorized employees at Lake City to make claims under Missouri's Worker's Compensation law. *See* 40 U.S.C. § 290.

For the third element it is necessary to plead "the emotional distress is medically diagnosable and medically significant." *Id.* Plaintiff properly pled the third element. *See* Second Amended Petition for Damages at 11.

"As a threshold it is first for the court to determine whether an average member of the community upon learning of the facts alleged by plaintiff would exclaim 'outrageous!'" *Hendrix,* 755 S.W.2d at 412. The conduct must be so outrageous "as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.; Pretsky v. Southwestern Bell Telephone Co.,* 396 S.W.2d 566, 569 (Mo. banc 1965).

■ Here, plaintiff alleges:

defendant, by and through its employees, on several occasions made telephone calls to the plaintiff at her residence in Independence, Missouri. The defendant, by and through its employees, during the aforestated telephone calls repeatedly insisted that plaintiff immediately attempt to requalify with a firearm and that her failure to do so would result in plaintiff's termination from defendant's employment.... At the time the defendant, by and through its employees, placed the aforestated telephone calls they knew that plaintiff was ill and was unable to undertake requalification with a firearm.

Second Amended Petition at 10–11. While this alleged conduct is perhaps insensitive, it does not go beyond all possible bounds of decency. See *Gibson v. Hummel,* 688 S.W.2d 4, 7–8 (Mo.App.1985) for a review of cases presenting fact situations more egregious than the facts herein which were held not to involve outrageous conduct. Thus, plaintiff's claim for intentional infliction of emotional distress must be dismissed.

E. The Factual Allegations in the Complaint Do Not Suggest that Plaintiff's Claim for Negligent Infliction of Emotional Distress is Preempted by the Missouri Worker's Compensation Act

Defendant argues that the Missouri common law claims for emotional distress are preempted by the Missouri Worker's Compensation Act, Mo.Ann.Stat. §§ 287.010 *et seq.* Plaintiffs argue that the alleged injuries did not arise out of or in the course of employment. Therefore, the claims are not preempted by the Worker's Compensation Act.

■ Missouri's worker's compensation law provides the exclusive remedy for emotional distress inflicted during the course of employment. *Waldermeyer v. ITT Consumer Financial Corp.,* 767 F.Supp. 989, 993 (E.D.Mo.1991); *Russell v. United Parcel Service, Inc.,* 666 F.2d 1188, 1192 (8th Cir.1981). "The compensation law does not supplement the common law but is wholly substitutional in character and creates entirely new rights and remedies." *Todd v. Goostree,* 493 S.W.2d 411, 416 (Mo.App. 1973).

■ Under the Act, an employee's injury is compensable only if it arises out of and in the course of employment. Mo.Ann. Stat. § 287.120; *Kloppenburg v. Queen Size Shoes,* 704 S.W.2d 234, 236 (Mo. banc 1986). An injury arises *out of* employment if it is a rational consequence of some hazard connected with employment or a risk reasonably inherent in the particular conditions of employment. *Crofts v. Harrison,* 772 S.W.2d 901, 903 (Mo.App.1989). An injury arises *in the course of* employment if it occurs within the period of employment at a place where the employee reasonably may be fulfilling the duties of employment. *Shinn v. General Building Corp.,* 789 S.W.2d 230, 232 (Mo.App.1990).

Plaintiffs argue that the injury did not occur while plaintiff was fulfilling the duties of employment because all of the harassing telephone calls occurred while Mashel Miller was at home, suspended from defendant's employ.

Responding to plaintiffs' argument that the harassing telephone calls were not work-related, defendant argues that plaintiffs are estopped from asserting that position because Mashel Miller filed a worker's compensation claim for emotional distress

with the Division of Worker's Compensation. Defendant argues that it would be inequitable to permit plaintiff to take a conflicting position in this case.

■ The equitable doctrine of estoppel requires "that the injured party relied on the conduct of the [other party] or was misled by it to his prejudice." *Spalding v. Agri–Risk Services*, 855 F.2d 586, 588 (8th Cir.1988) (quoting *Martinelli v. Security Ins. Co.*, 490 S.W.2d 427, 433 (Mo.App. 1972)).

■ To prevail on its argument for equitable estoppel, defendant must produce evidence establishing reliance. I cannot consider the evidence presented by defendant showing reliance because in ruling on a motion to dismiss pursuant to Rule 12(b)(6), I am limited to the allegations in the Complaint, exhibits attached to the Complaint, orders and other items appearing in the record of the case, and matters of public record. Defendant's presentation of plaintiff's Report of Injury to the Division of Worker's Compensation, although a public record, does not establish defendant's reliance.

■ The facts alleged in the Complaint do not establish that plaintiff's alleged injury is a rational consequence of some hazard connected with employment or a risk reasonably inherent in the particular conditions of employment, or that her alleged injury occurred at a place where she reasonably might have been fulfilling the duties of employment. Thus, the Motion to Dismiss this claim will be denied.

## II. *Motion for Summary Judgment*

### A. Standard for Summary Judgment

Rule 56(c), Federal Rules of Civil Procedure, provides that summary judgment shall be rendered if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." In ruling on a motion for summary judgment, it is the court's obligation to view the facts in the light most favorable to the adverse party and to allow the adverse party the benefit of all reasonable inferences to be drawn from the evidence. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *Inland Oil and Transport Co. v. United States*, 600 F.2d 725, 727–28 (8th Cir.), *cert. denied*, 444 U.S. 991, 100 S.Ct. 522, 62 L.Ed.2d 420 (1979).

■ If there is no genuine issue about any material fact, summary judgment is proper because it avoids needless and costly litigation and promotes judicial efficiency. *Roberts v. Browning*, 610 F.2d 528, 531 (8th Cir.1979); *United States v. Porter*, 581 F.2d 698, 703 (8th Cir.1978). The summary judgment procedure is not a "disfavored procedural shortcut." Rather, it is "an integral part of the Federal Rules as a whole." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986); *see also City of Mt. Pleasant v. Associated Electric Cooperative, Inc.*, 838 F.2d 268, 273 (8th Cir.1988). Summary judgment is appropriate against a party who fails to make a showing sufficient to establish that there is a genuine issue for trial about an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2553.

The moving party bears the initial burden of demonstrating by reference to portions of pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, the *absence* of genuine issues of material fact. However, the moving party *is not required* to support its motion with affidavits or other similar materials *negating* the opponent's claim. *Id.* (emphasis added).

The nonmoving party is then required to go beyond the pleadings and by affidavits, depositions, answers to interrogatories and admissions on file, designate specific facts showing that there is a genuine issue for trial. *Id.* A party opposing a properly supported motion for summary judgment cannot simply rest on allegations and denials in his pleading to get to a jury without any significant probative evidence tending to support the complaint. *Anderson v.*

 

*Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The evidence favoring the nonmoving party must be more than "merely colorable." *Id.* at 249–50, 106 S.Ct. at 2511. When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show there is some metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co. v. Zenith Radio,* 475 U.S. 574, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (footnote omitted).

The inquiry to be made mirrors the standard for a directed verdict: whether the evidence presented by the party with the onus of proof is sufficient that a jury could properly proceed to return a verdict for that party. *Anderson v. Liberty Lobby* 477 U.S. at 250, 106 S.Ct. at 2511. Essentially, the question in ruling on a motion for summary judgment and on a motion for directed verdict is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. *Id.* at 2512.

B. Insufficient Facts Presented to Determine Whether Plaintiff's Common Law Claims are Preempted by the Missouri Worker's Compensation Act

Neither party has produced sufficient evidence that is relevant to the issue of whether or not plaintiff's alleged injury arose out of and in the course of employment. Thus, the Motion for Summary Judgment must be denied.

### III. *Conclusion*

Accordingly, it is ORDERED that:

1) defendant's Motion for Leave to File Sur–Reply Suggestions in Support of Motion to Dismiss or, in the Alternative, for Summary Judgment is granted;

2) defendant's Motion to Dismiss or, in the Alternative, for Summary Judgment is granted in part and denied in part; and

3) Counts I through VI and Count VIII of plaintiffs' Second Amended Petition for Damages are dismissed.